## BURTON et al. v. KIRBYVILLE STATE BANK OF KIRBYVILLE.

### No. 3781.

Court of Civil Appeals of Texas. Beaumont.
April 3, 1941.

Rehearing Denied April 9, 1941.

Synnott & Smith, of Jasper, and John B. Warren and Fowler & Conn, all of Houston, for appellants.

Collins, Williams & Garrison, of Lufkin, and Richardson & Lanier, of Jasper, for appellee.

O'QUINN, Justice.

On the 13th day of February, 1935, there were two state banks in the city of Kirbyville, the Kirbyville State Bank, with a capital stock of $40,000, and the Peoples State Bank, with a capital stock of $20,000. Under the orders of the State Banking Department, these two banks merged and formed a new bank, the Kirbyville State Bank of Kirbyville, with a capital stock of $30,000. In liquidation of the assets of the two old banks, they entered into the following contract with the new bank:

"State of Texas
"County of Jasper
  "Know All Men by These Presents:
  "That this agreement and contract made and entered into in five original counterparts this 13th day of February, A. D. 1935, by and between Kirbyville State Bank, Kirbyville, Texas, a banking corporation organized and existing under the laws of the State of Texas, domiciled at Kirbyville, Texas, hereinafter called 'party of the first part', and The Kirbyville State Bank of Kirbyville, Texas, a banking corporation organized and existing under the laws of the State of Texas, domiciled at Kirbyville, Texas, hereinafter referred to as 'party of.the second part', each of said corporations acting by and through their duly authorized officers and in pursuance of resolutions heretofore duly adopted by the respective Board of Directors of each banking corporation, witnesseth:
  "1. In consideration of the assumption by party of the second part of all the liabilities of party of the first part as of the date of transfer, except its liabilities to its stockholders, as such, party of the first part agrees to sell and party of the second part agrees to purchase all of the assets of party of the first, except such assets as were classified as doubtful and loss in the examination report of State Bank Examiner W. N. Greer as of January 15, 1935, but

including the amount classed as doubtful in the Bonds & Stocks Account. Such assets as are purchased by party of the second part are to be embodied in a schedule and designated and identified as 'Class A Assets' as of date of delivery thereof, such schedule to constitute a part of this contract, and such ledger assets as are not purchased by party of the second part are to be embodied in a schedule to be designated and identified as 'Class B Assets'.

"2. All 'Class B Assets' and all non-ledger and charged off assets shall be transferred to party of the second part under the following conditions: That party of the second part will maintain such records as will keep these assets segregated from the assets of the party of the second part; that the party of the second part shall have the right to substitute at any time for a period of two years any 'Class A Assets' for a like face amount of 'Class B Assets' or non-ledger assets; that party of the second part shall have the right to proceed with the liquidation of 'Class B Assets' with the right to compromise or sell any of such assets as is now permitted by law, and proceeds from such sale shall be treated and considered as 'Class B Assets'; that party of the second part shall have the right during the two year period of substitution to permit renewals in whole or in part of both 'Class A' and 'Class B Assets', said renewal paper, however, not to have a maturity period beyond the expiration of the substitution period hereinbefore stated, such right of renewals to include renewal of renewals, and in making renewals, party of the second part shall have the right to divide or separate the liability of any obligor or obligors on either secured or unsecured notes or on other like or similar instruments, attaching the security thereto to one or more of said instruments, and leaving one or more of said instruments without security,—in case of such division or separation of liability, the holder of the unsecured instrument shall have a second lien upon said security and both the secured and unsecured instruments shall be stamped, or otherwise marked, with appropriate legend indicating the respective rights of the holders of each of said instruments; that, at the end of the two year period of substitution, party of the second part shall return to party of the first part, or its authorized representative, all 'Class B Assets.'

"3. Party of the first part agrees to execute such satisfactory instruments of transfer as may, in the opinion of party of the second part be necessary or advisable to transfer ownership in any and all assets acquired hereunder by party of the second part.

"4. Party of the second part is not to purchase from party of the first part, and party of the first part is not to sell the following notes: N. B. Thompson, $3,750.00; J. A. Conn, $3,750.00; R. C. Conn, Jr., $3,750.00; and R. J. Conn, $3,750.00; and they are not to be treated as 'Class B' or non-ledger assets, it being expressly agreed that party of the second part will cause to be issued $15,000.00 of its stock prorata to the stockholders of the party of the first part, and that upon receipt of such stock party of the first part will cancel and deliver to the makers the aforementioned notes.

"5. Party of the second part expressly agrees to assume the payment of income debentures due the Reconstruction Finance Corporation by party of the first part in accordance with the tenor and effect of such debentures, provided such assumption is approved by the Reconstruction Finance Corporation.

"6. This contract is executed in five originals and shall be binding upon and inure to the benefit of the parties hereto and to each of their successors and assigns, and to any person succeeding to the legal rights of each of the parties hereto. In witness whereof, parties hereto have set their hand and affixed their seals this 13 day of February, A. D. 1935."

The new bank immediately took charge of the assets of the two old banks, classified as stated in the contract. On the 23 day of October, 1937, J. A. Conn, as president and E. J. Conn, N. B. Thompson, William Crockett, R. J. Conn, Jr., and Mrs. Lena Nance, deceased, as the Board of Directors of the Kirbyville State Bank, a dissolved bank, instituted this suit in district court of Jasper County against appellee, the Kirbyville State Bank of Kirbyville, Texas, the new bank, on behalf of all stockholders of the old bank, Kirbyville State Bank, praying for an accounting on the Class B Assets, as set up in the contract of merger. The nature of the petition and of appellee's answer will be more fully stated in the discussion of the propositions of error. The Peoples State Bank, one of the old banks, is not a party to this

1098

litigation. Disclaimers were filed by many of the stockholders of the Kirbyville State Bank, some of them being named in plaintiffs' petition and some not named. The plaintiffs who prosecuted the suit to judgment were limited practically to members of the Conn family. The case was submitted to the jury on the following special issues, both answered in the affirmative:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant (The Kirbyville State Bank of Kirbyville) on February 9, 1937, sold, transferred and delivered to the Trout Creek Lumber Company notes involved in this controversy to Citizens State Bank of Corrigan, Texas?"

"Special Issue No. 2. Do you find from a preponderance of the evidence that the defendant (its officers or agents) acted in good faith and with no intent to defraud the plaintiffs in making the above sale?"

All other issues made by the plaintiffs' pleadings were ruled against them, as a matter of law. On the verdict of the jury and the "undisputed evidence," judgment was entered that the plaintiffs take nothing, from which they have prosecuted their appeal to this court.

We take the following statement from appellee's brief: "Appellants do not here complain of any failure on the part of the Trial Court to submit to the jury any issue of fact whatever. Their contentions being, aside from certain contentions as to the admission and exclusion of evidence and rulings upon pleadings, that they were as a matter of law entitled to judgment for various sums of money and for interest in certain tracts of land. Such contentions being based upon the assertion that the evidence showed without dispute or beyond controversy such facts as entitled them to judgment as matter of law."

As we understand the facts, all transactions had by the new bank with the Class B Assets were had between the time of its organization and the time the Conn family, who were in control of the new bank, sold their stock in the new bank to C. E. Pool, except the transactions between the new bank and the Corrigan Bank, which the jury found to be a bona fide sale.

█ We overrule appellants' assignments against the verdict of the jury, finding that the sale of the Trout Creek Lumber Company notes was in good faith. Much testimony was offered on this transaction. Under the testimony of Mr. Pool and Mr. Wickline, the transaction was in good faith, and on the evidence as a whole the jury was justified in taking their statement of the facts. This conclusion overrules appellants' propositions 9 to 15.

█ By other propositions, appellants assert that as a matter of law they were entitled to judgment for certain specific items of damages brought forward in their propositions. There is no complaint that the court erred in refusing to send to the jury any issue in relation to these items. As a general statement under these propositions, we quote from appellee's brief, as follows: "We also feel justified by the evidence in saying that the management of the new bank up to the time J. A. Conn and his relatives and a few others sold their stock in the new bank to Pool, the management of the new bank, the Board of Directors as hereinabove described, were in trouble with the banking department about the condition of the new bank. Thus in September, 1935, the banking department classed the Five Thousand Nine Hundred ($5,900.00) Dollar debt held by the new bank against the Trout Creek Lumber Company as a loss. On October 4th, 1935, the banking Commissioner made an order reciting that a report of the examination of the bank September 7th, 1935, 'reflects a capital impairment and I have been informed that at this time said impairment has not been relieved.' And ordering 'said bank to make good the deficiency set out in your report of examination at close of business September 7th, 1935,' concerning which order witness Conn was asked. On September 26th, 1935, the Department had written the Directors of the defendant bank saying the examination of September 7th, 1935, reflects 'a capital impairment in the amount of Three Thousand Fourteen & 42/100 ($3,014.42) Dollars'. And further that it was the judgment of the Department the bank could not obtain deposit insurance until that impairment was met and requesting a reply over a majority of your signatures within ten days. And April 3rd, 1936, the Department addressed a letter to L. C. Edwards, Cashier of the defendant bank enclosing part of report and requiring the bank to charge against Profit and Loss Account One Thousand Seven Hundred Eighty & 80/100 ($1,780.-80) Dollars. First item is Nebb and Weir notes."

In answer to appellants' propositions that, as a matter of law, they were entitled

to judgment for the specific items brought forward in their propositions, we quote from appellee's brief, as follows:

"That the President of and the members of the Board of Directors of the old bank became almost in solido the President and Directors of the new bank—the exception being that E. J. Conn and Mrs. Lena Nance, directors of the old bank did not become directors of the new bank. All that is shown by Appellants' Statement in their Brief, pages 1 and 6. There was one additional director, Miss Beulah Wright for the new bank. These officers brought with them the cashier of the old bank, B. C. Ivey to be cashier of the defendant bank, and L. C. Conn assistant cashier. That the proof relied upon by plaintiffs and contended by them to show as matter of law the wrongful acts of the defendant consisted of the testimony of J. A. Conn, who was an interested party not only because he was a plaintiff but because he was a stockholder in the old bank and would profit out of any recoveries in this suit, and statements as to what the records of the defendant bank showed, which records were practically all made while the persons who constituted the Board of Directors of the old bank and who bring this suit as such were in charge of the new bank as its directors and which records were not shown to have been correctly kept, but on the contrary were shown not to have been correctly kept.

"Further of the seven members of the Board of Directors of the old bank only four, J. A. Conn, E. J. Conn, R. C. Conn Jr. and N. B. Thompson, are prosecuting this suit; two of the directors of such old bank, R. J. Conn and Wm. Crockett filed disclaimers and did not prosecute the suit in the Trial Court and are not prosecuting this Appeal. That of the persons who owned stock in the old bank those who prosecuted the suit and are prosecuting this Appeal owned only 173 shares, while those who refuse to prosecute the suit and disclaim owned 184 shares and the owners of the other 43 shares are not accounted for. That of such four directors who are prosecuting this suit J. A. Conn and after him N. B. Thompson were President of the new bank during all the time but about two and one-half months of the two year period mentioned in the contract, and that during that same time another of the three prosecuting this suit as directors of the old bank, R. C. Conn Jr., was also a director of the new bank. Practically all the record entries by which plaintiffs sought to fix liability on this defendant were made during the regime of those three directors, J. A. Conn, N. B. Thompson and R. C. Conn Jr. Neither of the cashiers, Ivey or Edwards nor the assistant cashier, L. C. Conn, nor any of the bookkeepers who had charge of the records of the defendant during the time mentioned was called as a witness; and when the defendant attempted to make enquiries as to the correctness of the record the plaintiffs strenuously objected on the ground that the defendant was bound by the records no matter who made them nor whether true or correct; and on the ground that neither the old bank, nor the parties who brought this suit as director of the old bank nor individual stockholders of the old bank would be bound by any acts of such directors as directors of the new bank. Where record entries were advantageous to plaintiffs they insisted they were indisputable proof, not even subject to explanation or correction though erroneous, and when favorable entries were not found Conn proceeded to testify from memory and hearsay."

By propositions 2 to 8, appellants assert that they were entitled to judgment, as a matter of law, for their claimed interest in the J. W. Richardson note, certain real estate conveyed to the bank in satisfaction of the Conn-Few note, their claimed interest in the rents from certain real estate, and in the funds derived from the settlement of the U. B. Ogden notes. The following statement from appellee's brief answers this contention: "Every transaction upon which plaintiffs, the Appellants here, seek to charge the defendant bank presented in said propositions, (except some matters presented in the 8th proposition) occurred while the plaintiffs who sue here as directors of the old Kirbyville Bank were in charge of this defendant bank; and the bookkeeping was done and book entries were made while the said plaintiffs had complete charge and management of this defendant bank. And that other than so far as any such transactions are proven by books and book entries, the plaintiffs' right to recover depended wholly, solely and alone upon the testimony of J. A. Conn one of the plaintiffs, who was not only a party to the suit but also personally interested in any recovery the plaintiffs might get in this suit. Plaintiffs do not in their Brief here complain of any failure of the Trial Court to submit any issue whatever; but contend that upon every matter which they

claim in those propositions they were entitled to judgment from the Court as a matter of law. The records kept while the plaintiffs were so in charge of this defendant bank were not proven to have been correctly kept and in fact the plaintiffs objected to every inquiry as to the correctness or such records. That a party is not entitled to recover as a matter of law upon any question shown by his own testimony alone is well settled."

■ The only contentions briefed under propositions 16 to 26 are that the court erred in overruling their exceptions to appellee's answer, wherein it pleaded that some of the appellants—naming members of the Conn family—were appellee's officers and directors at the time appellee dealt with the Class B Assets, and further, that "it is wholly immaterial, irrelevant and prejudicial to the plaintiffs on any issue in this case as to who were the officers and directors of the defendant bank during the period under investigation and at the present time, and the same constitutes no defense in the suit by the plaintiffs to require the defendant bank to account to them for their interest in the class 'B' assets of the old Kirbyville State Bank and the collections made thereon by the defendant, and the whole of said paragraph 14 should be stricken therefrom." The court did not err in overruling these exceptions. It was pertinent to allege that appellants, as officers and directors of the new bank, made the very transactions of which as plaintiffs they now complain. . It was also pertinent to allege that as officers of the new bank they made these transactions, and having transferred the assets in issue to the new bank sold their stock therein, thereby receiving directly the profits of their dealings with the Class B Assets. Answering these assignments, appellee makes the following statement, which is certainly good law: "In answer to those propositions Appellee merely reminds this Court that by the pleadings and the evidence and the disclaimers filed it clearly appears that the plaintiffs who were actively prosecuting this suit were prosecuting it for their own benefit alone. And we assert that under such circumstances such plaintiffs could be and should be held to be estopped by their acts and conduct, and the

representations alleged in the 14th paragraph of Defendant's Answer to have been made by such plaintiffs to the purchasers of such stock."

■ In their petition, appellants named certain stockholders as claiming interests in the Class B Assets; this petition was read to the jury. The court did not err in permitting appellee to read to the jury the disclaimers filed by certain stockholders who were named as plaintiffs, and by other stockholders for whose benefit the suit was brought. These disclaimers were filed, and appellants could have eliminated this issue by not reading to the jury as plaintiffs the names of those who had filed disclaimers.

The court did not err in striking appellants' supplemental petition, filed not as a supplemental petition but as an amendment, in part, to their trial petition.

■ The 30th proposition discusses error against the following statement by one of appellee's counsel: "Well, they are charging us with some rascality in connection with the Allen Few transaction, and let me get the pleading from them, which charge is about on a par with their other charges in this case." Immediately, the court instructed the jury not to consider the statement; that instruction rendered the statement harmless error, even if it could be classed as error, which it could not.

■ By propositions 31 to 33, appellants assign error against testimony on the issue of the value of certain lands taken by the new bank in payment of Class B Assets. The point made is that this testimony was "immaterial and irrelevant." The exception is without merit, but in no event could the testimony have prejudiced appellants on their assignment that, as a matter of law, they were entitled to judgment for their interest in the property put in issue by this testimony. For the same reason, the court did not err in receiving the evidence complained of by propositions 34, 35 and 36.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.